IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELVIN COURTRIGHT | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-1551 |
| | : | |
| SUPERINTENDENT ROZUM, et al. | : | |

## ORDER

AND NOW, this 31st day of March, 2016, upon careful and independent consideration of

Petitioner Kelvin Courtright's pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254

and the response thereto, and upon de novo review of the Report and Recommendation of United

States Magistrate Judge Henry S. Perkin and Courtright's objections thereto, it is ORDERED:

1.      Courtright's objections (Document 16) are OVERRULED;[1]

---

[1] Courtright alleges four grounds for relief in his habeas petition. He first claims the trial court lacked subject matter jurisdiction to try his case because the murder statute is unconstitutional. Secondly, he argues the trial court lacked subject matter jurisdiction because the prosecutor failed to charge him with the necessary elements of first-degree murder. He next argues the prosecutor violated the Fifth and Fourteenth Amendments by not notifying him of the elements to be proven at the preliminary hearing. Lastly, Courtright alleges the prosecutor violated the Sixth and Fourteenth Amendments by not notifying him of the elements to be proven at trial. In his June 18, 2015, Report and Recommendation, the Magistrate Judge concluded Courtright's claims were procedurally defaulted and no cause and prejudice exists to remove the default; he therefore recommended the Court deny Courtright's petition. Courtright objects to the Magistrate's recommendation, asserting (1) his claims were exhausted and not defaulted, (2) if his claims were defaulted, the ineffective assistance of his PCRA counsel provides cause for excusing his default, and (3) his claims have merit. Under 28 U.S.C. § 636(b)(1), this Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." Upon de novo review, the Court concludes none of the objections have merit.

Courtright first objects to the Magistrate Judge's finding that he failed to exhaust his claims, arguing his claims, which challenge the trial court's subject matter jurisdiction over him, may be raised at any time. As the Magistrate Judge observed, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is not satisfied "if [a petitioner] has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The question or claim, moreover, "must have been 'fairly presented' to the state courts." *Keller v. Larkins*, 251 F.3d 408, 414 (3d Cir. 2001) (citing

*Picard v. Connor*, 404 U.S. 270, 275 (1971)); *McCandless v. Vaugh*, 172 F.3d 255, 261 (3d Cir. 1999) (noting for a claim to have been "fairly presented," "a petitioner must present [its] factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted"). If a petitioner fails to exhaust state remedies and may no longer obtain state court review due to a state procedural bar, federal habeas review is also "barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . , or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1990); *see also Schlup v. Delo*, 513 U.S. 293, 324 (1995) (holding the fundamental miscarriage of justice exception requires the petitioner to establish actual innocence). Courtright provides no authority for the proposition that "claims challenging subject matter jurisdiction may be raised at any time during the course of the proceedings . . . without concern for the usual procedural restrictions of waiver." Pet'r's Objs. 5. Contrary to Courtright's assertion, in fact, claims regarding a Court's subject matter jurisdiction are subject to the PCRA one-year time limitation. *Commonwealth v. Dickerson*, 900 A.2d 407, 412 (Pa. Super. Ct. 2006).

Courtright suggests alternatively he exhausted his claims because they were presented to state courts in three filings: a pro se motion for remand on the basis of ineffective assistance of PCRA counsel filed with the Superior Court, an application for reargument also filed with the Superior Court, and a petition for allowance of appeal filed with the Supreme Court. But in Courtright's own words, his initial PCRA petition focused on the prosecution's failure to affirmatively prove malice at his murder trial, *see* Am. Pet., ECF. No. 6, at 25, rather than the claims he advances today. Even if the Court were to credit Courtright's assertion that he presented the same federal constitutional claims he now pursues to the Superior Court and the Supreme Court, "all claims that a petitioner in state custody attempts to present to a federal court for habeas corpus review must have been fairly presented to each level of the state courts." *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b)). Courtright admits he did not present these claims to *each* level of the state courts. *See* Am. Pet., ECF. No. 6, at 34. Having failed to do so, Courtright's claims are considered procedurally defaulted. *See McCandless*, 182 F.3d at 263.

To the extent Courtright argues his procedural default is excused under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), due to PCRA counsel's refusal to present the claims Courtright now raises in his habeas petition, the Court disagrees. *Martinez* altered the rule set forth in *Coleman* such that a prisoner may now show cause for a procedural default by alleging "appointed counsel in the initial-review collateral proceeding, where the claim should been raised, was ineffective under the standards of *Strickland v. Washington*" and by "also demonstrat[ing] that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say . . . that the claim has some merit." 132 S. Ct. at 1318-19. The *Martinez* exception applies only to claims of ineffective assistance "causing procedural default at the initial-review collateral proceeding, not collateral appeals." *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) (citing *Martinez*, 132 S.Ct. at 1320). Therefore, it has no application to counsel's refusal to present Courtright's claims on PCRA appeal. As for counsel's failure to present the claims in the initial PCRA petition, it is not clear, as an initial matter, that such a claim is cognizable. *Martinez* recognized only a "narrow exception" to *Coleman*, *see* 132 S. Ct. at 1315, and, on its face, limited the exception's application to the constitutional claim presented in that case: an ineffective assistance of trial counsel claim, *see id.* at 1320. In contrast, here Courtright's

"underlying" habeas claims challenge the constitutionality of state homicide statute and the prosecutor's conduct, not trial counsel's ineffectiveness.

Even if Courtright's claims were cognizable under *Martinez*, the Court cannot conclude counsel was constitutionally ineffective for failing to present those claims in the PCRA petition. There is a strong presumption that a counsel's actions are within the "wide range of reasonable professional assistance that . . . the challenged action 'might be considered sound [appellate] strategy.'" *Buehl v. Vaughn*, 166 F.3d 163, 173 (3d Cir. 1999) (alteration in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (citation omitted)); *see also Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than sheer neglect."). Indeed, in this case, it appears counsel pursued what he believed were meritorious claims under the law: when Courtright sought for counsel to amend his initial PRCA petition to include claims akin to the ones he raises in his habeas petition, counsel responded that he and Courtright had already "determined issues [I] believed could reasonably argued under the law" and advanced those issues at the PCRA hearing. *See* Letter (Jan. 8, 2010), ECF No. 6-2, at 75. Nothing in this record overcomes the presumption PCRA counsel excluded the claims Courtright wished to pursue based on a sound appellate strategy informed by his professional experience.

Nor can Courtright demonstrate his claims are substantial; that is, that they have merit. *See Martinez*, 132 S. Ct. at 1318-19. To the extent Courtright objects to the Magistrate Judge's conclusions that his claims lack merit, the Court overrules Courtright's objection. While the Court agrees with the Magistrate Judge's analysis of why charging Courtright with homicide generally was not in error and why the prosecutor did not violate the Constitution by failing to provide notice at the preliminary hearing or at trial, the Court will further address what Courtright calls his "core" claim: that Pennsylvania's homicide statute does not expressly contain the state-of-mind element—malice aforethought—which makes killing murder rather than manslaughter.

"It is axiomatic that Pennsylvania may, within certain constitutional limits, define first-degree murder in whatever way the Commonwealth sees fit." *Smith v. Horn*, 120 F.3d 400, 414 (3d Cir. 1997). Under Pennsylvania's Crimes Code, a person is guilty of criminal homicide if "he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa. Con. Stat. § 2501. The Code defines criminal homicide as "murder of the first degree when it is committed by an intentional killing," *id.* § 2502(a), and intentional killing as "killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing," *id.* § 2502(c).

Because the Criminal Code does not indicate malice is an element of first-degree murder, Courtright contends the statute and the prosecutor failed to provide notice of an element of the crime in violation of due process. Courtright is mistaken. Malice is not a separate element of first-degree murder, but rather is synonymous with the specific intent to kill required for first-degree murder—"intentional killing," which *is* defined in the statute. *See, e.g.*, *Commonwealth v. Briggs*, 12 A.3d 291, 306 n.14 (Pa. 2011) (noting malice distinguishes first-degree murder from other crimes involving an intentional and unlawful taking of human life, such as voluntary manslaughter); *Commonwealth v. Laird*, 988 A.2d 618, 625 n.2 (Pa. 2010) (holding specific-intent murder "plainly subsumes a malicious mental state"); *Commonwealth v. Gay*, 413 A.2d 675, 677 (Pa. 1980) (instructing jury that murder is killing with malice aforethought; first-degree murder is willful, deliberate, and premeditated killing; and voluntary manslaughter is killing

2.      The Report and Recommendation (Document 14) is APPROVED and ADOPTED;

3.      Courtright's petition for writ of habeas corpus (Document 6) is DENIED; and

4.      A certificate of appealability shall not issue.

5.      The Clerk of Court is DIRECTED to mark this case CLOSED.


BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

without malice was not error); *Commonwealth v. Garcia*, 378 A.2d 1199, 1206 (Pa. 1977) ("The essential element necessary to sustain a murder conviction, which distinguishes murder from involuntary manslaughter, is the state of mind of malice."). "Criminal homicide is committed with malice if it is committed with an intent to kill." *Commonwealth v. Garcia*, 378 A.2d 1199, 1206 (Pa. 1977); *see also Commonwealth v. Carbone*, 574 A.2d 584, 588 (Pa. 1990) (explaining in order to convict a defendant of first-degree murder, the Commonwealth must prove beyond a reasonable doubt the defendant killed another person "willfully, deliberately and with premeditation (otherwise referred to as with malice)"); Pennsylvania Suggested Criminal Jury Instruction 15.2501A (Criminal Homicide) ("Malice is a shorthand way of referring to any of three different mental states that the law regards as being bad enough to make a killing murder . . . . Thus, for murder of the *first degree*, a killing is with malice if the perpetrator acts with: first, an intent to kill, or . . . the killing is willful, deliberate, and premeditated."). In short, malice is simply shorthand for the willful, deliberate, premediated intent to kill.

Courtright is correct that this specific intent to kill, or malice, must be proven beyond a reasonable doubt by the prosecution at trial. *See Carbone*, 574 A.2d at 588. But the prosecution may provide proof via wholly circumstantial evidence, or inference from a defendant's actions. *See Briggs*, 12 A.3d at 306. Because malice is not a separate element of the crime of first-degree murder, but rather synonymous with or a shorthand for the mens rea requirement articulated in the Crimes Code, of which Courtright had notice of via the Information charging him with homicide, Courtright's claims regarding the constitutionality of the statute lack merit.

4